14 F.Supp. 348 (1936)
GENERAL SALES & LIQUOR CO.
v.
BECKER et al.
No. 11603.
District Court, E. D. Missouri, E. D.
February 10, 1936.
Robert L. Aronson, of St. Louis, Mo., and Arthur R. Felsen and James R. McMurdo, both of East St. Louis, Ill., for plaintiff.
Roy McKittrick, Atty. Gen., of Missouri, Edward H. Miller, Asst. Atty. Gen., of Missouri, and Fred M. Switzer, Jr., and James T. Blair, both of St. Louis, Mo., for defendants.
Before FARIS, Circuit Judge, and DAVIS and MOORE, District Judges.
*349 DAVIS, District Judge.
The plaintiff in this action seeks a temporary and a permanent injunction restraining the defendants from enforcing certain sections of the Liquor Control Act of the State of Missouri, on the ground that said sections infringe the commerce clause of the Constitution (Const. art. 1, § 8, cl. 3) and the equal protection clause of the Fourteenth Amendment.
The case was heard by a statutory three-judge court.
The application for a temporary injunction and the case on the merits were submitted to the court at the same time.

Finding of Facts.
The facts were stipulated by the parties, and the court adopts the same by reference as the finding of facts in this cause, the same as though they were expressly set out herein.

The Statutes.
The Liquor Control Act of Missouri, Laws of Missouri 1935, p. 273, § 21-a-2 (Mo.St.Ann. § 4525g25a, p. 4689), provides in part: "It shall be unlawful for any person, firm, partnership or corporation residing without this state to solicit, receive or take orders for the sale of intoxicating liquor within this state except by or through a duly licensed wholesale liquor dealer who shall be considered for the purpose of this Act as the agent of said non-resident person, firm, partnership or corporation or to haul or transport intoxicating liquor, or cause to be hauled or transported intoxicating liquor, in any manner whatsoever in or into this state, for sale, or storage and sale in this state, unless the same has been ordered by such duly licensed wholesale liquor dealer. The books and records of all such licensees, and their principals, as to sales made for delivery in Missouri, shall be at all times open to the inspection of the Supervisor of Liquor Control."
Section 30-d (Mo.St.Ann. § 4525g33d, p. 4689) provides: "It shall be unlawful for any person in this state holding a license or permit to sell beer or malt liquors or holding any retail liquor dealer's license or permit, to purchase any such beer, malt liquor, or intoxicating liquor, from any person other than the brewer, manufacturer, or distiller thereof, or a regularly licensed wholesaler or distributor of beer, malt liquor, or other intoxicating liquor, in the case of malt liquor, and other intoxicating liquor, brewed, manufactured or distilled, in this state; or, to purchase from any brewer, manufacturer, or distiller, any intoxicating liquor, manufactured outside of this state, except through a wholesaler or distributor, in this state holding, and operating under, a license or permit issued by the Supervisor of Liquor Control."

Comment.
The act further provides that a wholesale dealer in this state shall pay an annual license fee of $500, and that a nonresident must pay the same fee in order to sell intoxicating liquors in this state. The plaintiff has paid this fee and is authorized to sell liquors in this state. Plaintiff cannot, however, sell directly to a retail liquor dealer, but must sell to a wholesale dealer in this state, or through such wholesale dealer to the retail dealer.
This constitutes the basis of the contention in this case. The plaintiff contends to require it to pay the same license fee that the Missouri wholesale dealer is required to pay, and then to prohibit plaintiff from selling liquor to the retail dealer as the resident wholesale dealer may do, places a burden upon interstate commerce, and deprives plaintiff of the equal protection of the law under the Fourteenth Amendment.
The Twenty-First Amendment, effective December 5, 1933, provides: "Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."
The Webb-Kenyon Act, 27 U.S.C.A. § 122 provides: "that the shipment or transportation of intoxicating liquor" from any place into a State "to be received, possessed, sold, or in any manner used * * * in violation of any law of such State * * * is hereby prohibited."
Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A.1917B, 1218, Ann.Cas. 1917B, 845, holds that the Webb-Kenyon Act is constitutional:
(1) That Congress may properly prevent the shipment of liquor into a state in violation of the law of that state.
(2) That the movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law were in express terms divested by *350 the Webb-Kenyon Act of their interstate character.
(3) Congress by the Webb-Kenyon Act released and surrendered to the states the authority to regulate interstate commerce of intoxicating liquors into the several states, and made its importation into a particular state subject to the laws of that state.
McCormick & Co. v. Brown, 286 U.S. 131, 52 S.Ct. 522, 76 L.Ed. 1017, 87 A.L.R. 448, holds:
(1) That Webb-Kenyon Act was not repealed by the Eighteenth Amendment, or National Prohibition Act (27 U.S.C.A. § 1 et seq.).
(2) That alcoholic preparations, made and sold for medicinal, mechanical, toilet, and culinary purposes, held subject to provisions of the West Virginia prohibition statute, and regulations thereunder, by which nonresident manufacturers and wholesalers, though holding federal permits issued under the National Prohibition Act, are required to obtain state permits and pay state license fees before shipping such products into the state, even to purchasers holding state licenses as retail dealers.
Congress has from time to time enlarged its control over interstate commerce, and occasionally it seems to have withdrawn its control over such commerce. The Webb-Kenyon Act is such an instance. So far as intoxicating liquors are concerned, when transported in interstate commerce, they cease to be under national control to the extent that the states have enacted statutes governing the transportation, sale, and use within their boundaries. So the Supreme Court has determined in McCormick & Co. v. Brown, supra.
The adoption of the Twenty-First Amendment has without doubt limited and qualified the commerce clause to the extent that state laws, regulating the importation of liquor into a state, place no prohibited burden upon commerce. This conclusion is in complete accord with that of the District Court in Joseph Triner Corporation v. Arundel, 11 F.Supp. 145, where it was determined that the purpose of the amendment was not to except intoxicating liquors from the provisions of the commerce clause. The amendment does recognize the authority of the state to regulate the movement of liquor into the state, and where availed of, as in this case, the importation of intoxicating liquors in violation of local law is outside the commerce clause.
The state statute attacked in this case places restrictions upon the disposition of intoxicating liquors shipped by nonresidents into Missouri. They can only be sold in a certain manner and to certain dealers. They may not be sold and delivered directly to retail liquor dealers. This gives this plaintiff no cause of complaint that a burden has been placed upon interstate commerce, because the state having acted, the liquor imported has to that extent lost its character as an article in interstate commerce. There is no basis for the contention made by plaintiff that the statute must fall because it places a restriction upon commerce between the states.
Cases determined prior to the Webb-Kenyon Act, upon which plaintiff relies, are no longer controlling.

Equal Protection Clause of the Fourteenth Amendment.
The equal protection clause does not prevent the state from making classifications of persons in the enactment of laws under the police power, but permits wide discretion in that regard, and avoids what is done only when it is without any reasonable basis, and purely arbitrary. Even in the absence of proof, if any state of facts can reasonably be conceived that would sustain the classification, the existence of that state of facts will be assumed. The burden is on the party who assails the classification to show that it is arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas.1912C, 160. See cases cited therein.
In Rippey v. Texas, 193 U.S. 504, 24 S.Ct. 516, 48 L.Ed. 767, the court said that a state may prohibit the sale of intoxicating liquor absolutely, or it may prohibit it conditionally.
In Eberle v. Michigan, 232 U.S. 700, 34 S.Ct. 464, 58 L.Ed. 803, a state law prohibited the sale of liquor by merchants, but permitted its sale by druggists, but the court said this did not infringe the equal protection clause.
La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362, held that a state statute, prohibiting a nonresident from securing a license as an insurance broker, unless the applicant has for two years been a licensed insurance agent, did not conflict with the Fourteenth Amendment.
No principle is better settled than that the state in the exercise of its police *351 powers, in doing what it conceives to be necessary to promote public morals, the public health, and the public safety, may prohibit the manufacture and sale of intoxicating liquor, or may regulate and supervise the manufacture and sale of such liquors in such manner as it conceives to be necessary and proper. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; Kidd v. Pearson, 128 U.S. 1, 9 S.Ct. 6, 32 L.Ed. 346. In so legislating it may be that private property is destroyed, that some class of individuals are prohibited from or restricted in engaging in the business of selling liquors, but this has never been construed as being prevented by the Fourteenth Amendment.
The necessity for the full exercise of its authority by the state was never greater than it is at this time. These courts have seen something of the liquor traffic, and the efforts of the national and state authorities to curb, regulate, and confine it in lawful channels. The argument that state activity is not necessary, that it is a mere pretense, "a formula or catchword," that federal supervision is adequate and efficient, is not convincing. In spite of all the attempts to regulate, a very large percentage of the hard liquor on the market today has been illegally manufactured outside of all the regulatory measures adopted. The court can properly observe what everybody knows. The situation does call for the strictest regulation of the business by all of our governmental agencies, national and state.
The plaintiff argues that "wholesale liquor dealers who are nonresidents of this state and wholesale dealers who reside here, are persons of the same class." This is an alignment of liquor dealers not made by the statute in question. Stated in this manner, the difference in privileges granted to resident and nonresident dealers in liquor is accentuated. The statutory denomination of liquor dealers, other than retail dealers, is "wholesale liquor dealer" who must be a resident, and "person, firm, partnership or corporation residing without this state" who may become a "licensee" to sell liquor in this state. The designation of both groups as wholesalers is plaintiff's designation and not that of the statute.
The Missouri Liquor Control Act (Mo. St.Ann. § 4525g1 et seq., p. 4689) permits a nonresident to sell intoxicating liquors in this state. The act specifically requires the Supervisor to inspect liquor to ascertain that it is pure, and that the product is properly labeled, stamped, and in the designated containers. It would be an impossible task for the state to inspect premises and product, and enforce regulations beyond its boarders. It would be next to impossible to inspect receipts of liquor by all of the thousands of retailers in this state to whom this nonresident seeks to be permitted to sell liquor. But whether it is possible or not, the state has seen fit to provide its own method of regulation.
To this end, and possibly for other reasons, the state has limited the sales of liquor made by nonresidents to sales made to wholesale dealers in this state, or to retail dealers, when the transaction is made through such wholesale dealers. The wholesale dealer is by the act made the agent of the nonresident whose transaction he handles.
In this manner the state has undertaken to supervise and regulate the sale of liquor in this state by nonresidents. If it is a fact, as it seems to be, that resident wholesalers enjoy privileges withheld from nonresident dealers, there is a perfectly obvious basis therefor. The classification made of dealers entitled to sell liquor to retailers in this state is a reasonable one, and not a mere arbitrary grouping of them, for the purpose of conferring some advantage to a particular class. The Missouri statute does not deny plaintiff any privilege granted it by the equal protection clause.

Conclusions of Law.
1. The Liquor Control Act of Missouri, section 21-a-2 and section 30-d (Mo.St.Ann. §§ 4525g25a, 4525g33d, p. 4689), are not unconstitutional and void by reason of infringing either the commerce clause, or the equal protection clause, of the Constitution.
2. The plaintiff is not entitled to have the enforcement of said statutes enjoined.
3. The temporary restraining order should be dissolved, a temporary and a permanent injunction should be denied, and plaintiff's bill dismissed on the merits.
FARIS, Circuit Judge (concurring).
I concur in the denial of the injunction prayed for by plaintiff, largely on the ground that in my opinion the state of Missouri has among its police powers the power to limit to residents only the right to sell intoxicating liquors. The reasons on which *352 this power rests, are, I think, too obvious to require exposition.
Plaintiff is a corporation of the state of Illinois, but it is not domiciled in the state of Missouri, nor has it taken out a license, set up an office, or appointed an agent in Missouri, all as required by statutes of Missouri in order that it may as a foreign corporation do an intrastate business in Missouri. But I concede that the agreed facts disclose that it has not done any business in Missouri, except such as is warranted by the law regulating interstate commerce. In other words, it has carried on in Missouri no intrastate business. If the commodities handled by plaintiff were other than intoxicating liquors, there can be, it is probable, no doubt that the statutory restriction on its freedom of making sales in interstate commerce, herein complained of, would be invalid as a burden on that commerce.
Plaintiff has fully complied with all laws governing its right to sell liquor. It has procured the necessary stamps, paid the taxes, and submitted to such examination of its books, papers, and invoices, and to the inspection of its stock of liquors held by it for sale, as the Liquor Control Act of Missouri (Mo.St.Ann. § 4525g1 et seq., p. 4689 et seq.) requires. I think the state may validly require such examination and inspection, and the difficulty and expense, if not impossibility in most situations, of making such, as to a foreign wholesale dealer, is one of the reasons above referred to.
So, the sole contention here made by plaintiff is that being a wholesale dealer, but a nonresident of Missouri, it is forbidden by the Liquor Control Act of Missouri to sell liquor to retail liquor dealers; while resident wholesale dealers may do so. There cannot, I think, be urged as existing any discrimination in the statutes attacked, as between liquors of foreign manufacture and those of domestic manufacture; for the agreed facts disclose that both beer and distilled spirits of foreign manufacture can be sold, and are being sold, in Missouri by licensed resident wholesalers, without let or hindrance. So, I think the sole question in the case is, in the final analysis, whether the state of Missouri has the right under the police power to require by statute that a wholesale dealer in intoxicating liquor must be a resident of Missouri. This is conceded by plaintiff in its brief to be the sole question up for judgment, for it admits that "the sole basis of the discrimination is resident or nonresidence." I think the alternative, that if such dealer does not see fit to become a resident of Missouri, then it must sell by or through such a resident, in no wise affects the principle involved. So, I repeat, the discrimination found in the Missouri statute is not against the commodities, but solely as to who may be licensed to sell them, and as seen this discrimination goes no farther than to require the seller to be a resident of Missouri. It is a discrimination as to residence and not one of citizenship, and no reason appears why plaintiff may not, by becoming a resident of Missouri, become qualified to sell both domestic or foreign liquors to retailers; so far, at least, as the two sections of the statute, herein attacked, are concerned. I am not saying that the necessity for a change of domicile might not in some situations be a burden on interstate commerce, but not in this case.
Plaintiff bottoms its contention of discrimination on the alleged violation by the accused statute of the commerce clause of the Federal Constitution and of that provision of the Fourteenth Amendment which forbids any state to pass a statute which deprives any person of the equal protection of the law. It may urge, of course, both of these contentions; but not being a citizen, or even a resident of Missouri, and being a corporation, it may not rely on any right to an equality with citizens of Missouri, under that provision of the Fourteenth Amendment which provides for an equality of "privilege and immunities."
I agree with the view taken by the courts in the case of Joseph Triner Corporation v. Arundel (D.C.) 11 F.Supp. 145, and Young's Market Co. v. State Board of Equalization (D.C.) 12 F.Supp. 140, that section 2 of the Twenty-first Amendment did not have the effect to abrogate the commerce clause and the equal protection clause of the Federal Constitution, in those states of the Union which, as is Missouri, are as "wide open" in the matter of the liquor traffic as it is possible to be and as they were prior to the adoption of the Eighteenth Amendment. Concededly, under the two cases above cited, the instant case is a close and difficult one. But in the light of the cases of La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362; Pembina Mining Co. v. Pennsylvania, 125 U.S. 181, 8 S.Ct. 737, 31 L.Ed. 650; Vance v. Vandercook Co., 170 U.S. 438, 18 S.Ct. 674, 42 L.Ed. 1100; McCormick *353 & Co. v. Brown, 286 U.S. 131, 52 S.Ct. 522, 76 L.Ed. 1017, 87 A.L.R. 448; and Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A.1917B, 1218, Ann.Cas.1917B, 845, and of the commodities dealt in and affected, I am not convinced of the invalidity of the statutes attacked, to that extent which warrants me in saying that they are invalid.
So, for the above reasons, particularly because the matter involves only a restriction upon the residence of the wholesale dealer, I concur in denying the injunction as prayed for by plaintiff, and in the dismissal of the bill.