KENNETH J. COLE, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 26049.)

JOHN G. CURRIE, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 26050.)

Court of Claims, November 10, 1942.

*Harry Z. Harris* for claimants.

*John J. Bennett, Jr., Attorney-General (John A. Behan* of counsel), for defendant.

GREENBERG, J.   Claimants seek to recover the sum of $200 paid by each of them to the State, in applying for licenses as private detectives or investigators, pursuant to article 7 (§§ 70–90) of the General Business Law (Cons. Laws, ch. 20.)   They claim that article 7 does not apply to them and that the applications and payments were made under duress. The claims are being discussed together, because the facts are substantially similar and the issues involved are identical.

Since 1930 claimant Cole, and since 1919 claimant Currie, have been and still are engaged in the city of Rochester, New York, in the business of adjusting fire insurance losses. They are retained only by insurance companies and not by the insured; they do not serve any one company but are employed by various insurance companies.

In the course of their employment as fire insurance adjusters, claimants render the following services: when a fire loss is referred to them by an insurance company, they visit the scene of the fire, ascertain the time of its occurrence, make an inspection to determine whether the fire was suspicious or occurred under suspicious circumstances and, if there be a suspicion, refer the matter to the arson squad or an investigator for the National Board of Underwriters; make inquiry and investigate whether any of the provisions of the insurance policy were violated and look over the damaged goods or building and instruct the insured as to the procedure to be adopted in presenting his claim; after the claim is presented by the insured, claimants check the statements made by the insured in the proof of loss to ascertain whether the information contained therein is true and, if found to be false, report same to the insurance company. It was also part of claimants' duties in adjusting a loss, to investigate the removal of stocks from a building before the fire, and to determine the amount of loss and endeavor to arrive at an agreement with the insured as to the amount thereof; if necessary, claimants employ experts to determine the values involved; after such agreement is made, claimants file their reports and the insured files his proof of loss with the insurance company.

Claimants were paid for services rendered on the basis of time consumed and expenses incurred by them in their work and not on a flat-fee basis, and they were paid regardless of whether or not the insured received payment of his claim.

Under date of July 17, 1940, claimants were advised by one Joseph Singer, an examiner in the Division of Licenses of the Department of State, as follows: " Please call to see the undersigned at the office of this department at 65 Broad Street, Rochester, on the 26th day of July, 1940, at 3:30 P.M., so that the necessity for a license under the provisions of Article 7 of the General Business Law may be discussed.

"Failure to attend will result in your case being scheduled for criminal prosecution."

At a conference held on July 25, 1940, at which said Joseph Singer was present, claimants described to him the nature of their business as fire insurance adjusters and stated that they believed that article 7 of the General Business Law did not apply to them. Singer advised claimants that their business came within article 7 of the General Business Law and that they were thereby required to secure licenses in order to continue such business, indicating to claimants that failure to secure such licenses was punishable by fine or imprisonment and would be referred to the Attorney-General for prosecution, whereupon claimants stated that they would make application for licenses.

Under date of August 23, 1940, Singer advised claimants in writing as follows: "You will recall that you were interviewed by me on July 25th, 1940, and that at that time you stated that your application for a license under the provisions of Article 7 of the General Business Law would be filed with this department during the week of July 29th. In view of the fact that you have failed to file and that more than a reasonable time has already elapsed, I am constrained to inform you that your application will have to be filed by August 29th, 1940. In the event you fail to do so, your case will be scheduled for criminal prosecution. This notice is final."

Subsequent thereto and on August 31, 1940, claimants filed with the Division of Licenses of the Department of State papers entitled "Application for a License as Private Detective or Investigator " and accompanying said applications were certified checks in the sum of $200 each, which were deposited by the State and paid. Claimants did not file the bonds required under section 74 of the General Business Law. Thereafter, Samuel A. Frazzetta, Jr., a license investigator of the Secretary of State's office, returned the application to claimant Cole for

correction and, subsequently, upon the demand of Samuel A. Frazzetta, Jr., Cole returned the application to the Department of State without having made the requested correction.

Under date of October 2, 1940, claimants advised the Division of Licenses that they desired to withdraw their applications and requested the return of their certified checks. The State failed to comply with said requests and to return the applications or to refund the moneys paid upon the filing of the applications nor did the State issue the licenses to the claimants herein.

Section 70 of the General Business Law provides: " No person, firm, company, partnership or corporation shall engage in the business of private detective or the business of investigator * * * or advertise his or their business to be that of detective or of a detective agency or investigator * * * *notwithstanding the name or title used in describing such agency or notwithstanding the fact that other functions and services may also be performed for fee, hire or reward,* without having first obtained from the department of state a license so to do * * * ." (Italics supplied.)

Subdivision 1 of section 71 of said law provides: " 'Private detective business ' shall mean and include * * * the business of investigator * * * and shall also mean and include, separately or collectively, the making for hire, reward or for any consideration whatsoever, or *any* investigation, or investigations for the purpose of obtaining information with reference to any of the following matters, *notwithstanding the fact that other functions and services may also be performed for fee, hire or reward;* * * * the credibility of witnesses or other persons; * * * the location or recovery of lost or stolen property; the causes and origin of, or responsibility for fires, or libels, or losses, or accidents, or damages or injuries to real or personal property * * *." (Italics supplied.)

There are two kinds of adjusters operating on behalf of insurance companies: (1) the company adjuster; (2) the independent adjuster. The first is a direct employee of the insurance company working regularly and exclusively for the company. To this type of adjuster the provisions of article 7 of the General Business Law are not applicable. Such adjuster falls within the exemptive provision contained in section 83 of the General Business Law, which provides, *inter alia,* as follows: " Nothing in this article shall apply * * * to any person regularly employed as special agent, detective or investigator exclusively by one employer in connection with the affairs of that employer only * * *."

The independent adjuster is a person, firm or corporation who holds himself or itself out for employment to more than one insurance company, is not a regular employee of the company, does not work exclusively for one company and is paid in each case assigned for time consumed and expenses incurred therein. Article 7 of the General Business Law, applies to the independent adjuster, requiring the procurement of a license thereunder.

The statute is not ambiguous, and the provisions thereof specifically include "investigators." Article 7 is entitled "Private Detectives *and* Investigators." Section 70 provides that any person engaged in the business of "private detective *or the business of investigator*" shall obtain a license from the Department of State. Furthermore, subdivision 1 of section 71 of said law in defining "private detective business" includes the business of making "*any* investigation." This definition, in and of itself, is rather broad and all inclusive. Later on in said subdivision, specific reference is made to the functions and services performed, and mentions "the causes and origin of, or responsibility for fires." The nature of claimants' services and the work performed by the claimants herein as adjusters for the insurance companies are included in the business of investigator and investigations referred to in sections 70 and 71 of the General Business Law. A contrary construction would render the reference to investigator or investigation meaningless.

The fact that the investigation work of an adjuster is part of and incidental to the adjustment of the claim does not exclude the claimants from the provisions of the statute, because there is a provision, section 70, which provides that "notwithstanding the fact that other functions and services may also be performed for fee, hire or reward." Any argument or contention that because the major part of claimants' work is that of adjustment, they are not investigators under the statute, is untenable. It is apparent that the Legislature made such provision to avoid any such contention and to eliminate any doubt.

Subdivision 6 of section 180 and section 182 of the Insurance Law (Cons. Laws, ch. 28) merely define what is known as a service organization, and provide for the filing with the Superintendent of Insurance of a copy of its constitution, articles of agreement or association, or of incorporation, and the by-laws and all amendments thereto, under which such service organization operates or proposes to operate, and, further, makes provision for examination by the Superintendent of Insurance when he may deem same expedient. The provisions of these

sections do not establish any minimum requirements for adjusters, nor do they call for licensing of adjusters. In fact, they do not expressly give any power to the Superintendent of Insurance with relation to independent adjusters. Article 7 of the General Business Law is a complement to these provisions of the Insurance Law, and is not inconsistent with or repugnant thereto.

It is also claimants' contention that the statute herein, particularly the provisions of subdivision 1 of section 72 which provide as a qualification that one should have been a detective, et cetera, precedent to the issuance of a license, is unconstitutional if intended to apply to adjusters, in that it violates the Fourteenth Amendment of the Constitution of the United States and section 1 of article 1 of the New York State Constitution. Subdivision 1 of section 72 of the General Business Law provides in part that: "Every * * * applicant shall establish * * * that such applicant * * * has been regularly employed as a detective or shall have been a member of the United States government investigative service, a sheriff or member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years."

The claimants argue that if the provisions of article 7 of the General Business Law are held to be applicable to them, the statute should be declared unconstitutional since it sets up an experience requirement impossible of performance by the claimants; that if it is held that fire adjusters are investigators under article 7, the claimants cannot obtain a license since they have not been "detectives" for three years; and that, therefore, the claimants are being deprived of their liberty to pursue their calling without due process of law.

"Detective," as used in subdivision 1 of section 72, should be construed broadly in line with the definition of same in sections 70 and 71, and should be given a meaning coextensive with the provisions of the latter sections of the statute. To hold otherwise would produce an obvious absurdity. The very question raised by claimants herein has heretofore been passed upon in the case of *Norwood* v. *Ward* (46 Fed. Rep. [2d] 312), wherein Circuit Judge Swan, writing for the court convened pursuant to the provisions of section 266 of the Judicial Code (U. S. Code, tit. 28, § 380), stated at page 314, as follows:

"The most serious challenge to constitutionality is based on the alleged unreasonableness of the previous experience prescribed for applicants for a license. Prior to 1910 the statute (Laws 1909, c. 529) required applicants to state name, age, etc.

' and such further facts as [may be required] * * * to show. the good character, competency and integrity ' of the applicant. The amendment of 1910 (chapter 515, Laws 1910) added the requirement that the applicant shall establish that he ' has been regularly employed as a detective or shall have been a member of the United States government secret service, a sheriff or member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years.' This requirement, if read literally, gives rise to doubt whether it does not unreasonably limit the classes of persons privileged to engage in the business in question. Other persons without such experience may be equally able to show the good character, competency, and integrity which the Legislature may reasonably insist upon. If the statute is construed to make the specified experience the sole means of proving competency and integrity, there would be at least serious question whether the test is not arbitrary and the requirement invalid within the principle of *Smith* v. *Texas*, 233 U. S. 630, 34 S. Ct. 681, 58 L. Ed. 1129, L. R. A. 1915D, 677; see also, *People* v. *Harrison*, 170 App. Div. 802, 156 N. Y. S. 679, affirmed 219 N. Y. 562, 114 N. E. 1076; *Atchison, etc. Ry.* v. *Arizona,* 33 Ariz. 440, 265 P.602, 58 A. L. R. 563.

" Indeed this doubt was recognized by a former attorney general of the state who, in order to sustain the statute, ruled that the term ' detective ' is to be construed broadly so as to include at least all experience in work which can be considered the supplying of ' information as to personal character;' *i. e.* the type of experience that will qualify is at least coextensive with the type of work for which a license may be required under section 70. Ops. Atty. Gen. N. Y. (1919) 256.

" That same opinion also held that one who did such work for a single employer without holding himself out to the public generally did not require a license, but could thereby acquire the necessary experience. In an earlier opinion, also, a broad view of the term ' detective ' was taken. Ops. Atty. Gen. (1911) 422. It would seem, then, that the statute can be treated by this court as if it read that three years' experience in obtaining information as to personal and business character must be had as prerequisite to obtaining a license to engage independently in that type of business. So construed the question becomes whether it is within legislative competence to prescribe a period of apprenticeship for those engaging in the business in question. Such a test of competency would, we believe, be valid. It does not unreasonably restrict the class of persons who may enter

the business. Compare *Latourette* v. *McMaster*, 248 U. S. 465, 39 S. Ct. 160, 63 L. Ed. 362.

" Plaintiffs argue that the statute does not permit of so liberal an interpretation as that made by the Attorneys General. Of this we are not convinced, and, in the absence of any state decision construing the statute, we are disposed to accept the interpretation of state officials charged with its enforcement — especially when such interpretation will enable us to uphold the statute and a contrary construction would destroy it. Moreover, it is not impossible that the experience requirement added by the 1910 amendment, if deemed invalid, might be held a separable provision, with the result that its invalidity would not invalidate the earlier enacted provisions. But we do not find it necessary to rule upon this latter question."

I am fully in accord with the decision of *Norwood* v. *Ward* (*supra*) and am of the opinion that the statute herein does not deprive claimants of their liberty and right to freely pursue a lawful occupation, nor is it an arbitrary restriction of their right to engage in the business in question, and the said statute, in my opinion, is not unconstitutional.

The payments having been made to the State by the claimants herein accompanying their applications for a license, in accordance with the statute made and provided for herein, and it having been determined that said statute applies to the claimants and to their business, and that it is not a violation of their constitutional rights, it is not necessary to rule upon the question as to whether payments were made under duress on the part of the State or its agents, and the claims are hereby dismissed upon the merits.