369 A.2d 871

**In re Application for Private Detective License of Leo A. HARDING, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1976.

Decided Feb. 18, 1977.

Thomas P. Kennedy, Scranton, for appellant.

No appearance entered nor brief submitted for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court improperly rejected his application for a private detective's license. We agree and, therefore, remand with a direction that the lower court grant appellant a private detective's license.

On March 3, 1976, appellant filed an application for a private detective's license in the Court of Common Pleas of Lackawanna County, Criminal Division. As part of his application, appellant submitted two letters regarding

his past work experience. Pennsylvania Auditor General Robert B. Casey wrote that appellant had been employed for over three years in the Department of the Auditor General as a detective in its Bureau of Investigations. Appellant's duties consisted of investigating violations of Pennsylvania law and reporting the results to state enforcement agencies. More specifically, appellant conducted surveillances, collected evidence, contacted informants, examined records, interviewed witnesses, interrogated suspects, and prepared detailed reports of investigations setting forth the evidence, facts, and conclusions. The Chief Counsel to the Auditor General, appellant's immediate superior, submitted a letter confirming the details of appellant's work experience outlined above. The Chief Counsel emphasized the difference between the Bureau of Investigations and other bureaus of the Department of the Auditor General which were primarily engaged in auditing State and State-supported agencies. Appellant also submitted excerpts from his work file documenting the above activities and demonstrating that appellant investigated crimes committed by state contractors and cases involving lost or stolen property.

On March 29, 1976, the lower court rejected appellant's application because it believed that appellant lacked the qualifications required by the Private Detective Act of 1953.[1]   Section 14 of that Act requires that "[e]very . . . applicant shall establish, to the satisfaction of the court of quarter sessions and by at least two duly acknowledged certificates, that such applicant . . . has been regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years." The

1. Act of August 21, 1953, P.L. 1273, § 1; Act of April 30, 1957, P.L. 98, § 1; 22 P.S. § 11 et seq.

lower court concluded that appellant's character is impeccable and his training and experience in mixed investigative work for the Auditor General's Office has been extensive. Appellant also attended 400 hours at a police recruit school at the Harrisburg Area Community College. The lower court conceded that "[t]here is little doubt that petitioner would make an excellent detective," but nevertheless denied his application because he failed to show that he had been "regularly employed as a detective."[2] The court cited the following factors in support of its decision: appellant did not have the power to arrest, appellant had to refer cases to the Department of Justice for prosecution, and the Auditor General's inquiries normally concerned accounting matters.

We must determine whether appellant's work experience in the Bureau of Investigations of the Department of the Auditor General is sufficient to establish that he "has been regularly employed as a detective." Our guidelines for this determination are ill-defined: no Pennsylvania appellate court case addresses the scope of this statutory provision and the Private Detective Business Act does not define "detective." However, the activities regulated by the Act provide some insight into the qualifications the legislature meant to require.

Section 12(a) of the Act defines "private detective business" as follows: " 'Private detective business' shall mean and include the business of private detective, private detective business, *the business of investigator,* or the business of watch, guard, or patrol agency." (Emphasis supplied). Section 12(b) elaborates upon the activities performed by those engaged in "private detective business" and regulated by the Act.

" 'Private detective business' shall also mean and include, separately or collectively, the making, for hire, reward, or for any consideration whatsoever, of any inves-

2. Appellant does not contend that he had any of the other work experience specifically listed in Section 14.

tigation or investigations for the purpose of obtaining information with reference to any of the following matters, notwithstanding the fact that other functions and services may also be performed for fee, hire, or reward:

"(1) Crime or wrongs done or threatened against the government of the United States of America or any state or territory of the United States of America.

"(2) The identity, habits, conduct, movements, whereabouts, affiliations, associations, transactions, reputation, or character, of any person, group of persons, association, organization, society, other groups of persons, partnership, or corporation.

"(3) The credibility of witnesses or other persons.

"(4) The whereabouts of missing persons.

"(5) The location or recovery of lost or stolen property.

"(6) The causes and origin of, or responsibility for, fires, or libels, or losses, or accidents, or damage, or injuries, to real or personal property.

"(7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

"(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.

"(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employes, agents, contractors and subcontractors.

"(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

"(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or

the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return thereof, or the performing of the service of such guard or other person, or any of said purposes." The qualifications required by Section 14 were designed to make sure that only people of good character, integrity, and competence could obtain a license. An applicant's future competence as a private detective can best be measured by his past performance of the activities common to his employment and the Act's definition of private detective business. In the instant case, the lower court correctly concluded that appellant had extensive qualifications as an investigator. More particularly, appellant has performed at least six of the activities mentioned in Section 12(b).[3] The lower court based its decision on appellant's inability to make arrests or initiate enforcement proceedings, but Section 14 does not explicitly require these experiences and Section 12(b) does not specifically cite these powers as part of its definition of "private detective business". We will not read these restrictions into the Act because they will not foster the legislative goal of licensing private detectives of good character who are able to investigate competently.[4]

Two cases from neighboring jurisdictions support our approach. In *Norwood v. Ward,* 46 F.2d 312 (S.D.N.Y. 1930), affirmed 283 U.S. 800, 51 S.Ct. 494, 75 L.Ed. 1422 (1931), the Court interpreted a statutory provision identical to the one in issue in this case as requiring an appli-

3. See § 12(b)(1), (2), (3), (5), (9), and (10).

4. The lower court also stated that the Department of the Auditor General is primarily engaged in auditing. As pointed out in the letter submitted by the Chief Counsel to the Auditor General, this characterization does not accurately represent the duties of the Bureau of Investigations whose employees do much of their work in the field.

cant to demonstrate experience co-extensive with the type of work for which a license may be required. Therefore, three years' employment experience in obtaining information as to personal and business character would satisfy the experience requirements of the New York statute. In *Schulman v. Kelly*, 54 N.J. 364, 255 A. 2d 250 (1969), the New Jersey Supreme Court interpreted the following provision: "[no license shall be issued to a person unless such person] has had at least five years' experience as an investigator or as a police officer with an organized police department of the State or a county or municipality thereof, or with an investigative agency of the United States of America or any State, county or municipality thereof." The court reversed a ruling by the lower court that prior investigative experience must be obtained as a member of an organized police department or a governmental agency engaged primarily in criminal investigative work; such a limitation would not help protect the public from unscrupulous and incompetent private detectives. The court found that an investigator of welfare fraud and missing persons for the Board of Freeholders had sufficient experience to qualify for a license. We find the reasoning of *Norwood* and *Schulman* persuasive and reject the additional restrictions read into the Act by the lower court in the instant case.[5]

The lower court concluded that appellant was eminently qualified by experience and character to be a private detective, but rejected his application solely because he did not have the power to arrest or to initiate enforcement proceedings. Because we hold that the requirements imposed by the lower court are not warranted by the Private Detective Act, we remand with a direction

5. Both *Norwood* and *Schulman* avoided federal and state constitutional issues of equal protection and special privilege. Appellant does not raise any constitutional objections as a basis for relief. Therefore, we do not consider the constitutionality of the Private Detective Act. See *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975).

that the lower court grant appellant a private detective's license.

Case remanded with direction.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

The Private Detective Act of 1953, Act of August 21, 1953, P.L. 1273, § 1 (22 P.S. § 11) *et seq., as amended,* requires an applicant to establish that he "has been regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years." In order to interpret the general description "detective," it is instructive to examine the other qualifying activities listed in the act. Each of the other activities necessitates membership in a trained, government regulated law enforcement organization. Each of the other positions carries with it the power to arrest. Yet, appellant's employment has encompassed neither of these experiences.

In order to protect Pennsylvania citizens from untrained, self-styled detectives, the legislature has prescribed strict qualifications for those who would become licensed detectives. The legislature possibly could have included a broader range of experiences without opening the occupation to poorly qualified applicants. However, the purpose of the judiciary is interpretation of statutes, not amendment of them. If the legislature had intended to qualify members of the Pennsylvania investigative service, it could specifically have done so. If the legislature had intended to qualify persons who had been regularly employed as investigators, it could specifically have done so.

The majority interprets the statute to mean that an investigator is a detective. I am unconvinced. There can

188

be no doubt that detectives must possess the ability to investigate. But that does not mean that an investigator is necessarily a detective. The word detective connotes experiences other than that of investigating. At the very least, a detective must have a strong working knowledge of the criminal laws, of the law enforcement system, and of law enforcement techniques. I do not believe that an investigator for the Auditor General's Office has been regularly employed as a detective. Therefore, I dissent and would affirm the order of the lower court rejecting appellant's application.